GRAND RAPIDS ELECTRIC CO. *v.* RINDGE BUILDING.

1. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.

   The trial court was not in error in refusing to give requests to charge where they were covered by the general charge.[1]

2. SAME.

   *Held,* no reversible error shown in the admission or rejection of testimony.[2]

3. SAME—CONDUCT OF COURT.

   A statement by the trial judge, made during the cross-examination of one of plaintiff's witnesses, that there was no testimony to show that a certain agent of plaintiff had read a certain letter, which was true at the time the statement was made, cannot be said to be prejudicial, although later there was testimony introduced to the effect that he had read it.[3]

Error to superior court of Grand Rapids; Verdier (Leonard D.), J.    Submitted October 31, 1924. (Docket No. 31.)    Decided April 3, 1925.

Assumpsit by the Grand Rapids Electric Company against the Rindge Building, a corporation, for services rendered and materials furnished.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Travis, Merrick, Warner & Johnson,* for appellant.

*Arthur F. Shaw,* for appellee.

MOORE, J.    This is an action by the plaintiff against the defendant to recover the sum of $2,914.80 for labor and materials furnished in wiring a building owned by the defendant.    The defendant claims plaintiff

---

[1]Trial, 38 Cyc. p. 1711; [2]Appeal and Error, 4 C. J. §§ 2952, 2986; [3]Trial, 38 Cyc. p. 1321 (1926 Anno).

agreed to do the work (with the exception of a few items) for a lump sum of $1,200. The jury returned a verdict for the plaintiff in the sum of $3,075.92, which is the amount (including interest) claimed by plaintiff. The case is brought into this court by writ of error.

The defendant was making over an old building. It had negotiations with plaintiff's officers about doing some electrical work therein. On September 15, 1922, a letter was written on behalf of the plaintiff proposing to do certain work, in which letter the following words were written:

"The approximate cost of this work, making job ready for fixtures, is $1,200."

The defendant company had a letter from the Lewis Electric Company dated September 19, 1922, in which it was stated they would do the work mentioned in detail in the letter for $1,728, or, if cheaper fixtures would do, for $1,152. After the receipt of this letter Mr. Cody and Mr. Read had an interview with defendant's manager which resulted in the sending of the following letter:

"Grand Rapids, Mich., Sept. 28, 1922.
"Mr. HENRY T. HEALD,
   c/o Howe, Snow, Corrigan, Bertles,
"401 G. R. Savings Bank Bldg.
"*Dear Sir:* We thank you for awarding us the contract for the electrical work in your new building and we accept it with the understanding that the cost shall not exceed $1,200 for the work as described to us by you and we will save as much on this price as possible in using your present material where it can be worked to advantage.
"This letter is simply in addition to the letter which you already have from us.
            "Yours truly,
      "GRAND RAPIDS ELECTRIC COMPANY."

It was the claim of the defendant that before this letter was written Mr. Cody and Mr. Read, in their

conference with Mr. Heald, were shown the letter from the Lewis Electric Company, and that one of them read it, and that it was agreed that the things mentioned therein should be done for the $1,200.   Mr. Cody and Mr. Read denied this.

This suit was commenced September 7, 1923.   The plea of the general issue was filed September 19, 1923. An amended plea was filed April 1, 1924, and the plaintiffs say that they never heard of the claim—that the letter of the Lewis Electric Company was the basis of the work they were to do until this amended plea was filed.

It may be significant that plaintiff's letter of September 28, 1922, made no allusion to the Lewis Electric Company letter, though it did say "This letter is simply in addition to the letter which you have already had from us."

It was admitted by the defendant that plaintiff did work in addition to that for which it was to pay $1,200, amounting to $1,541.20, and that the verdict of the jury should have been for $1,241.20, instead of for the amount before stated.

The plaintiff says that one of the largest items for which it was entitled to recover grows out of a situation stated by the witness as follows:

"On a Saturday afternoon the last part of November I happened to be in my office in the Electric Company and the 'phone rang and Mr. Heald advised me he was in a very bad predicament or words to that effect; that he had just been notified that the power company were going to cut off the electric service to his building on the following Monday morning and that it was on account of orders from the city inspector condemning the electrical work in the basement, and that he wished I would see that the work was put in such condition that the inspector would accept it, and the power company would not cut off the wires and cut off the service.   He said he was going out of town on Monday and would be gone for several days, and it would be necessary for him to

leave it to me to proceed with the work and to carry out the orders of the city electrician and the power company and to put the wires in the basement in first-class condition.    That he was particularly anxious that the service wires running to the elevators should be changed as the city inspector desired, and that the service should be kept up continuously to these elevators in the meantime—the freight and passenger elevator separately—so that the work could continue in the building.    He had his building full of carpenters, decorators and painters and the work could not be stopped and would I see that that was put in shape so the work would continue.    He also stated he wanted the basement wired for lights complete in locations about the same as he had in the upper floors, that he expected to rent the basement which he had not expected to do before, and he wanted me to attend to the whole work.    I told him I would see it was attended to, that we would attend to the matter so the power would not be shut off, and I thanked him for giving us the work."

Mr. Heald denied in the most positive terms that any such conversation occurred.

The assignments of error are grouped under the following heads:

(1) That the court erred in failing to give certain requests to charge submitted by defendant.

(2) The court erred in admitting and rejecting certain testimony.

(3) The court erred in expressing certain opinions as to certain testimony during the course of the trial.

1. It is particularly urged that the fifth, seventh and eighth requests should have been given.    These requests are as follows:

"5. The jury is instructed that if you find that the agreement between the parties was that plaintiff was to furnish labor and materials called for in the Lewis letter for the sum of $1,200, then the plaintiff is not entitled to recover more than that amount for such labor and materials even though such labor and materials as itemized would exceed that amount.

"7. The jury is instructed that the mere fact that

the plaintiff put in the labor and material as itemized in their bill rendered to the defendant, does not entitle them to recover more than the $1,200 for the labor and materials called for in the Lewis letter, provided you find that plaintiff agreed with the defendant to furnish the labor and materials called for in the Lewis letter for the sum of $1,200.

"8. The jury is instructed that it appears from the undisputed testimony that the defendant, prior to the conversation of September 27th or 28th, had about made up its mind to give the contract to the Lewis Electric Company and that the plaintiff was informed that one of its competitors was likely to receive the contract, whereupon Messrs. Cody and Read went to see Mr. Heald for the purpose of trying to get the contract and at that interview a conversation took place, the result of which was that the defendant gave plaintiff the contract for wiring the Rindge Building and just what that conversation was is for you to determine."

A reading of the general charge will show that the jury were correctly instructed in relation to the subject-matter of these requests.

2. Without going into detail we can safely say we find no reversible error in the admission or rejection of testimony.

3. Did the court err in what he said during the progress of the trial? We quote from the brief of counsel:

"The most important question in the case for the jury to determine was whether or not the plaintiff had agreed to do the work as set forth in the Lewis bid, for $1,200, and it was, therefore, important for the defendant to show that Mr. Cody, at the time he had his conversation with Mr. Heald, read the Lewis letter or bid.

"Counsel for defendant, on the cross-examination of Mr. Read, a witness for the plaintiff, endeavored to show that Mr. Cody had read that letter. During the course of the cross-examination the court made the following statement:

" 'There is no testimony he read it.—There is no testimony Mr. Cody read it.'

"It is clear that the jury would have every reason to believe that the court thought that Mr. Cody had not read the letter and, of course, it follows that if Mr. Cody had not read the letter, he probably didn't agree to do the work described therein for $1,200."

A reference to the record will show that Mr. Heald's testimony upon that subject did not come until later, and that what the trial judge stated at the time he stated it was true.

The other comments of the trial court which are criticized when the record is examined are shown to be justified. The testimony was in sharp conflict. The trial judge, in a charge covering nearly nine pages, attempted to present every phase of the case to the jury. Among other things he said:

"Reduced to figures, the plaintiff's claim is as follows: That his contract, the original contract was for $1,200; that he put in light fixtures amounting to $931.20, which is admitted, and that he put in extras amounting to $2,283.60, making a total of $4,114.80, of which $1,500 has been paid; leaving a balance as he claims of $2,914.80.

"The defendant's claims, as reduced to figures, are as follows: That the wiring contract was for $1,200. That the lighting fixtures amount to $931.20, and that the extras and the only extras which he claims were specified and were outside of the original contract were $610, making a total of $2,741.20, of which $1,500 has been paid, leaving a balance as the defendant claims of $1,241.20."

The important and decisive questions were purely questions of fact. These were presented to the jury in such a manner that they could not have misunderstood the issues involved.

The judgment is affirmed, with costs to the appellee.

McDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.